UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JONATHAN LUGO,

        Plaintiff,      **MEMORANDUM AND ORDER**

-against-     Case No. 08-CV-5250 (FB)(RML)

THE CITY OF NEW YORK, COMMISSIONER
RAYMOND KELLY, CAPTAIN DANIEL
MICKULAS, LIEUTENANT MIKE FOUNDER,
LIEUTENANT WILLIAMONT, SERGEANT
MARC MORENO, SERGEANT JOSEPH VICTOR,
SERGEANT THOMAS MARINO, LIEUTENANT
BECKER, and CAPTAIN FULTON,

        Defendants.
-------------------------------------------------------------x

*Appearances*:      *For the Defendant*:
*For the Plaintiff*:      MAXWELL DOUGLAS LEIGHTON, ESQ.
LINDA CRONIN, ESQ.      Office of Corporation Counsel
Cronin & Byczek, LLP      100 Church Street
1983 Marcus Avenue, Suite C-120      New York, NY 10007
New Hyde Park, NY 11042

**BLOCK, Senior District Judge:**

    Plaintiff Jonathon Lugo alleges that while employed as a police officer with the New York City Police Department ("NYPD"), he was subjected to race discrimination, a hostile work environment, retaliation, and malicious prosecution.[1] He brings claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and 42 U.S.C. § 1983 ("§ 1983") against the City of New York (the "City") and nine current or former NYPD employees (collectively, "defendants").[2]

---

[1] Lugo's complaint originally included claims for false arrest and conspiracy, which have since been withdrawn.

[2] Lugo also sued the NYPD. Because the NYPD is a non-suable agency of the City, it must be dismissed as a defendant. *See Jenkins v. City of New York*, 478 F.3d 76, 93 n.19

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, that motion is granted.

**I**

The following facts, which are taken from the parties' Rule 56.1 statements and supporting documentation, are undisputed unless otherwise noted. Where disputed, they are presented in the light most favorable to the plaintiff. *See, e.g., Federal Ins. Co. v. American Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011).

Lugo, who is Hispanic, joined the NYPD as a police officer on July 5, 1989 and was assigned to a transit bureau in Brooklyn, New York. On July 28, 2004, while off duty, Lugo and a friend went to a strip club called "Curves," located on Staten Island. Lugo was aware that his friend had a criminal record. After a fight broke out at the club, Lugo and his friend exited the building. Once outside, Lugo discharged multiple rounds of bullets from his firearm into the club vestibule. He did not report the incident to the NYPD. Also on July 28, 2004, Lugo was arrested and charged with reckless endangerment by the Richmond County District Attorney's Office (the "Richmond D.A."). The Richmond D.A. dropped those charges on May 30, 2006.

On August 11, 2004, the NYPD issued five disciplinary charges against Lugo in connection with the incident at Curves: (1) reckless endangerment for firing multiple rounds from his weapon; (2) failure to request the response of a patrol supervisor after the incident, as required by NYPD regulations; (3) knowingly associating with a criminal; (4) knowingly submitting a false Firearms Discharge Report; and (5) providing false statements during an Official Patrol Guide interview. On October 23, 2006, Lugo pled guilty to charges two and three.

---

(2d Cir. 2007). The caption is amended accordingly.

On June 9, 2006, Lugo was interviewed as part of an official internal NYPD investigation of the incident at Curves. Lugo admitted that he discharged three rounds from his service weapon as "warning shots" in response to a group of patrons who attacked him, and "three additional rounds into the lower portion of the [club's] glass doors." Def's Ex. B, Investigation Report. He also admitted that he knew that his companion at the club had a criminal record and had spent one year in jail, and that "his actions were reckless and endangered the lives of civilians." *Id.*

On March 1, 2007, following an administrative trial at which Lugo was represented by counsel and testified on his own behalf, the NYPD Deputy Commissioner of Trials issued a decision finding Lugo guilty of all five disciplinary charges and recommending his termination. Lugo was terminated on July 9, 2007.

Lugo filed a charge of discrimination with the federal Equal Employment Opportunity Commission ("EEOC") on April 17, 2008. In that charge, he referred to the following allegedly discriminatory incidents: (1) in late 2004 or early 2005, following the Curves incident, Lugo was suspended for 34 days without pay; (2) in Spring 2005 his supervisor, Lieutenant Becker,[3] harassed him using "racial comments and curses," saying on one occasion that "your kind don't get it"; (3) in Spring 2005 Lugo requested assistance in responding to a complaint but Becker would not permit other officers to assist him; and (4) in Summer 2005 Lugo was charged with failing to file proper paperwork in response to a complaint, and was

---

[3] The 56.1 statements and supporting documentation do not contain Lieutenant Becker's first name.

disciplined by losing one vacation day.[4]  Def's Ex. F, EEOC Charge.

## II

As a preliminary matter, defendants argue that Lugo's claims are time barred.

### A. Governing Statutes of Limitations

A Title VII action is timely if a plaintiff (1) files a charge with the EEOC within 300 days of an allegedly discriminatory act; (2) receives an EEOC "right to sue" letter; and (3) commences the action within 90 days of receiving the right to sue letter.  *See Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 131 (2d Cir. 1996).  The statute of limitations for claims under the NYSHRL and the NYCHRL is three years.  *See Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 238 (2d Cir. 2007).  The statute of limitations for claims under § 1983 is also three years.  *See McKithen v. Brown*, 481 F.3d 89, 100 n.12 (2d Cir. 2007).

### B. Discrimination under Title VII, NYCHRL, and NYSHRL

Lugo first claims that his termination from the NYPD was discriminatory.  Lugo was terminated from the NYPD on July 9, 2007, and filed a complaint with the EEOC on April 17, 2008, 283 days later.  He commenced this action on December 30, 2008, 89 days after receiving his right to sue letter on October 2, 2008, and approximately 18 months after being terminated.  Accordingly, Lugo's termination occurred well within the relevant statutes of limitations and his claim that the termination of his employment constituted unlawful discrimination is timely.

### C. Malicious Prosecution under § 1983

Lugo's malicious prosecution claim is based upon the charges brought against him by the Richmond D.A.  The Richmond D.A. dropped those charges on May 30, 2006.  Lugo

---

[4] Lugo did not provide the specific dates on which these events occurred.

commenced this action less than three years later. *See Heck v. Humphrey*, 512 U.S. 477, 499 (1994) (the statute of limitations for a § 1983 malicious prosecution claim does not begin to run until the criminal proceeding ends favorably for the criminal defendant). Accordingly, Lugo's malicious prosecution claim is timely.

**D. Retaliation and Hostile Work Environment under Title VII, NYCHRL, and NYSHRL**

In his retaliation and hostile work environment claims, Lugo argues that over the course of his employment with the NYPD he was the victim of discriminatory harassment. In particular, these claims are based upon the allegedly discriminatory acts enumerated in his EEOC complaint: (1) his 34-day suspension; (2) his supervisor's allegedly racist comments, of which Lugo provides only one specific example; (3) his supervisor's refusal on one occasion to provide back up when Lugo responded to a complaint; and (4) Lugo's punishment for failing to file proper paperwork. All of these occurred in between late 2004 and Summer 2005 and, as Lugo concedes, consequently fall outside the relevant statutes of limitations.

Lugo argues that these claims are nonetheless timely, however, under the "continuing violation exception." This exception applies "for claims that the discriminatory acts were part of a continuing policy and practice of prohibited discrimination," *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1997), where at least "one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." *Patterson v. Cnty of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004). The continuing violation exception is "disfavored in the Second Circuit," *Johnson v. Frank*, 828 F. Supp. 1143, 1159 (S.D.N.Y. 1993), and generally applies only "to cases involving specific discriminatory policies or mechanisms such as discriminatory seniority lists." *Lambert*, 10 F.3d at 53; *see Flores v. N.Y. City Human Res. Admin.*, 2011 WL 3611340, at *3 (S.D.N.Y.

5

2011) (The continuing violation doctrine "is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances.") (internal quotation marks omitted). "Discrete acts" which do not collectively form a single unlawful employment practice are "not actionable if time barred"; instead, "each discrete act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-15 (2002).

Lugo has not submitted any details on the alleged discrimination he experienced in 2005; nothing in the available facts suggests that these acts were connected to one another and to Lugo's termination approximately two years later. *See Weeks v. N.Y. State*, 273 F.3d 76, 84 (2d Cir. 2001) ("Absent unusual circumstances, a two-year gap is a discontinuity that defeats use of the continuing violation exception."). There is no evidence from which a reasonable factfinder could infer that these incidents provide "proof of specific ongoing discriminatory polices or practices," or constitute "specific and related instances of discrimination [which] are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994). His termination, which was a consequence of the 2004 incident at Curves nightclub, was a "discrete act" completely independent of any of the 2005 incidents. *See Morgan*, 536 U.S. at 114 (noting that termination is an example of an "easy to identify. . . discrete act."); *Sundaram v. Brookhaven Nat'l Labs*, 424 F. Supp. 2d 545, 560 (E.D.N.Y. 2006) ("[T]he exception does not apply to discrete, completed employment actions such as transfers, failures to promote, demotions, or inadequate wages."). The continuing violation exception does not apply where, as here, "the incidents involved different conduct by different persons in diverse contexts, and were not repetitive or ongoing in nature." *Swanston v. Pataki*, 1999 WL 504905, at *4 (S.D.N.Y. 1999), *aff'd* 25 Fed. Appx. 38 (2d

6

Cir. 2001).

Accordingly, Lugo may not bring claims to challenge conduct that falls outside the statutes of limitations for Title VII, the NYSHRL, and the NYCHRL. As a result, his claims for retaliation and hostile work environment are untimely and are dismissed.

## III

Defendants contend that Lugo's discrimination claim must be dismissed because Lugo cannot establish that discriminatory animus was the true reason for his termination. Lugo counters that his termination from the NYPD was discriminatory because "[s]imilarly situated non-Hispanic... officers who were involved in shootings, were treated more favorably... in that they were not terminated." Pl's Mem. of Law at 7.

**A. Standards Governing Discrimination**

In order to survive a motion for summary judgment on a claim of intentional discrimination under Title VII, the NYSHRL, and the NYCHRL, a plaintiff must satisfy the three-part burden-shifting test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff bears the burden of establishing a prima facie case of discrimination by showing: (1) membership in a protected class; (2) that he was qualified for his position; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). If the plaintiff succeeds in making out a prima facie case, "the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for its action . . . If such a reason is provided, plaintiff. . . may still prevail by showing, without the benefit of the presumption, that the employer's determination was in fact the result of. . . discrimination." *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008).

With respect to the fourth element of the prima facie case, a "showing of disparate treatment – that is, a showing that an employer treated [an employee] less favorably than a similarly situated employee outside his protected group– is a recognized method of raising an inference of discrimination for the purposes of making out a prima facie case." *Ruiz v. Cnty of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (internal quotation marks omitted). A plaintiff relying on disparate treatment evidence must show that he was "similarly situated in all material respects to the individuals with whom [he] seeks to compare [himself]." *Mandell v. Cnty of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks omitted).

**B. Analysis**

Defendants do not dispute that Lugo is a member of a protected class, was qualified for his position as a police officer, and that his termination constituted an adverse employment action. Thus, the validity of Lugo's claim turns on the fourth element.

Lugo has submitted a list of 17 allegedly non-Hispanic NYPD officers who "were involved in shootings" and were not terminated. Pl's Mem. of Law at 17. Each entry on the list contains a brief notation such as "similar incident, discharge of weapon"; only ten of the entries include the officer's name. *Id.* For the purposes of summary judgment, such conclusory allegations will not suffice. *See Cameron v. Comm. Aid for Retarded Children, Inc.*, 335 F.3d 60, 63 (2d Cir. 2003) ("Purely conclusory allegations of discrimination, absent any particulars, are insufficient" to defeat a motion for summary judgment). In the absence of any further information about these individuals – the specific circumstances of each shooting, what if any investigations or disciplinary actions occurred in response, and so on – Lugo has not submitted any facts that could reasonably support a conclusion that he and these individuals were "similarly situated in all material facts" and that they received more favorable treatment. *See*

8

*Carter v. New Venture Gear, Inc.*, 310 Fed. Appx. 454, 457 (2d Cir. 2009) (affirming summary judgment where plaintiff "provided no evidence that similarly situated black workers were punished differently than white coworkers for actual, comparable incidents").

Accordingly, Lugo has not established a prima facie case of discrimination because he has not submitted any evidence to show that his termination occurred under circumstances giving rise to an inference of discriminatory intent. Summary judgment is granted with respect to his discrimination claims under Title VII, the NYSHRL, and the NYCHRL.

**IV**

Lugo also contends that the charges filed against him by the Richmond D.A. on the day of the Curves incident constituted malicious prosecution under § 1983.

To establish a claim for malicious prosecution, the plaintiff must prove that: (1) the defendant initiated or continued a criminal proceeding against the plaintiff; (2) the proceeding terminated in plaintiff's favor; (3) the defendant lacked probable cause to commence the proceeding; and (4) the defendant was motivated by actual malice. *See Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997).

Lugo's malicious prosecution claim fails on the first element. No individual from the Richmond D.A., the office which initiated Lugo's criminal prosecution by charging him with a crime, is named as a defendant in this action. Instead, Lugo vaguely states that "Defendants. . . pursu[ed] the charges against Plaintiff." Pl's Mem. of Law at 16. Lugo has not provided any specific allegations or evidence showing that any of the individual defendants "initiated" the criminal proceeding against him or were otherwise involved in his arrest and prosecution. *See Rohman v. N.Y. City Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000) (to be held liable on a malicious prosecution claim, the defendant must have played an "active role in the prosecution, such as

giving advice and encouragement or importuning the authorities to act.").

Accordingly, Lugo's malicious prosecution claim is dismissed. Having dismissed Lugo's § 1983 claim against the individual defendants, Lugo's § 1983 claim against the City must be dismissed as well. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("[I]f [the police officer] inflicted no constitutional injury on the respondent, it is inconceivable that [the City] could be liable to respondent"); *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) (an "underlying constitutional violation" by a municipal official is required for *Monell* liability).

**V**

For the foregoing reasons, defendants' motion for summary judgment is granted with respect to all of Lugo's claims. The complaint is dismissed in its entirety, with prejudice.

**SO ORDERED.**

                                        s/ Judge Frederic Block

                                        FREDERIC BLOCK
                                        Senior United States District Judge

Brooklyn, New York
August 3, 2012